UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

PAULA HENRY,

                                   Plaintiff,

              -against-

THE CITY OF NEW YORK, CORRECTION ASSISTANT
COMMISSIONER AND E.E.O. OFFICER KAMMAE
OWENS, CORRECTION E.E.O. ATTORNEY
INVESTIGATOR GREG CHEUNG, CORRECTION
OFFICER CLEON WILEY, CORRECTION OFFICER
JOSHUA MOYE, CORRECTION OFFICER MIGUEL
JIMENEZ, CORRECTION OFFICER OHLYNN WRIGHT,
CORRECTION DEPUTY WARDEN LISA BARNABY,
CORRECTION WARDEN JEAN RENE, CORRECTION
ADMINISTRATIVE CAPTAIN RASHIDA SMITH,
CORRECTION DEPUTY COMMISSIONER SARENA
TOWNSEND, CORRECTION CAPTAIN TASHANA
LINDSAY-SMITH, CORRECTION CAPTAIN YVETTE
WYNN, CORRECTION CAPTAIN LATANYA PATILLO,
CORRECTION OFFICER CONROY MORGAN,
CORRECTION SUPERVISOR OF MECHANICS BRIAN
FAHY, AND JOHN AND JANE DOES 1-8,

                                 Defendants.

--------------------------------------------------------------------X

Docket No.:
21 CV 5980 (FB)(RLM)

**THIRD**
 **AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, PAULA HENRY, by her attorney, JESSICA MASSIMI, hereby complains of the

Defendants, upon information and belief, as follows:

## NAUTE OF THE CASE

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

    §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L.

    No. 102-166) ("Title VII"), 42 U.S.C. Section 1983, the New York State Human Rights Law,

    New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the New York City Human

    Rights Law, New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL"); and seeks

damages to redress the injuries Plaintiff has suffered as a result of sexual harassment, being discriminated against on the basis of her sex, gender, status as a woman, and perceived status as a transgender women, and retaliated against by the Defendants solely for objecting to this discrimination. Plaintiff also brings this claim for negligence, *respondeat superior*, assault, and battery.

## **VENUE AND JURISDICTION**

2.  Venue is properly laid, pursuant to 28 U.S.C. § 1391, et seq., in the Eastern District of New York, where Defendant City of New York resides, and where the majority of the actions complained of herein occurred in that (1) Plaintiff's assault occurred at George R. Vierno Center ("GRVC") at Rikers Island Correctional Facility, 09-09 Hazen Street, East Elmhurst, NY 11370, and (2) much of Defendants retaliation of Plaintiff occurred at the DOC Headquarters located at 75-20 Astoria Boulevard, East Elmhurst, NY 11370. Both locations are in Queens County, New York.

3.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, Title VII, and 42 U.S.C. § 1983.

4.  Plaintiff respectfully requests that the Court exercise supplemental jurisdiction over Plaintiff's state law claims of negligence, *respondeat superior*, assault, and battery because the facts giving rise to all federal and state causes of action alleged herein are based on a common nucleus of operative facts.

5.  Plaintiff timely served a Notice of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

6.  At least thirty days have elapsed since service of Plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

7.  That the within action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State Law.

8.  Plaintiff timely filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC"), on July 26, 2021.

9.  Plaintiff received a Notice of Right to Sue from the United States Department of Justice, Civil Rights Division, dated October 19, 2021, with respect to the herein charges of discrimination.

10. This action is commenced within 90 days of receipt of said Right to Sue.

11. Defendant City employs more than 15 employees.

## **PARTIES**

12. At all relevant times mentioned herein, Defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Department of Correction ("DOC").

13. At all times mentioned herein, Plaintiff, Paula Henry, was an adult woman and resident of Bronx County, in the State of New York. At all times mentioned herein, Plaintiff Paula Henry was and is employed by DOC as a correction officer.

14.

15. At all times mentioned herein, Defendant Correction Assistant Commissioner and E.E.O. Officer Kammae Owens was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Owens was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant Owens had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

3

16. At all times mentioned herein, Defendant Correction E.E.O. Attorney Investigator Greg Cheung was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Cheung had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

17. At all times mentioned herein, Defendant Correction Officer Cleon Wiley was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Wiley was Plaintiff's co-worker.

18. At all times mentioned herein, Defendant Correction Officer Joshua Moye was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Moye was Plaintiff's co-worker.

19. At all times mentioned herein, Defendant Correction Officer Miguel Jimenez was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Jimenez was Plaintiff's co-worker.

20. At all times mentioned herein, Defendant Correction Officer Ohlynn Wright was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Wright was Plaintiff's co-worker.

21. At all times mentioned herein, Defendant Correction Deputy Warden Lisa Barnaby was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Barnaby was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant Barnaby had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

22. At all times mentioned herein, Defendant Correction Warden Jean Rene was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Rene was

Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant Rene had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

23. At all times mentioned herein, Defendant Correction Administrative Captain Rashida Smith was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Smith was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant Smith had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

24. At all times mentioned herein, Defendant Correction Deputy Commissioner Sarena Townsend was an adult employed by the City of New York as the Deputy Commissioner of the Intelligence, Investigation & Trial Division. Defendant Townsend had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment and in fact did just that as alleged below.

25. At all times mentioned herein, Defendant Correction Captain Tashana Lindsay-Smith was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Lindsay-Smith was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant Lindsay-Smith had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

26. At all times mentioned herein, Defendant Correction Captain Yvette Wynn was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Wynn was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant Wynn had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

27. At all times mentioned herein, Defendant Correction Captain Latanya Patillo was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Patillo was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant Patillo had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment.

28. At all times mentioned herein, Defendant Correction Officer Conroy Morgan was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Morgan was Plaintiff's co-worker.

29. At all times mentioned herein, Defendant Correction Supervisor of Mechanics Brian Fahy was an adult employed by the City of New York as a member of DOC. At all times material, Defendant Brian Fahy was responsible for maintaining the pantry door that divides Housing Area 7A and 7B of GRVC.

30. At all times mentioned herein, Defendants John and Jane Does 1-8 were adults employed by the City of New York of varying ranks including but not limited to officers and captains. Defendants John and Jane Does 1-8's names are currently unknown to the Plaintiff. The Doe Defendants participated in the Plaintiff's discrimination in various ways including but not limited to as described below by maliciously and falsely informing incarcerated people that Plaintiff is a transgender woman who was assigned male at birth, falsely charging Plaintiff with disciplinary violations in retaliation for her complaints of discrimination, and by continuing to retaliate by Plaintiff by, *inter alia*, placing her back to work in the same area where she was assaulted.

31. Defendants Townsend, Lindsay-Smith, Wynn, Patillo, Morgan, Owens, Cheung, Wiley, Moye, Jimenez, Wright, Barnaby, Rene, Smith, Fahy, and John and Jane Does 1-8 are sued in their official and individual capacities.

32. Defendants Townsend, Lindsay-Smith, Wynn, Patillo, Morgan, Owens, Cheung, Wiley, Moye, Jimenez, Wright, Barnaby, Rene, Smith, Fahy, and John and Jane Does 1-8 are collectively referred to herein as the "Individual Defendants."

33. Plaintiff has repeatedly attempted to obtain all names of DOC members involved in her discrimination, harassment, and retaliation but the DOC continues to withhold this basic information as described below.

34. Additionally, on May 3, 2021, Plaintiff's counsel filed a FOIL request for various documents and items of information which would have revealed the names of the Defendants.

35. On August 9, 2021, Stephanie L. Plantain, Associate General Counsel for DOC, wrote to Plaintiff's counsel and stated as follows:

> This is an interim response to your request for records (copy enclosed) relating to Ms. Massimi [sic] made pursuant to the New York State Freedom of Information Law. Please be advised that the investigative documents and records relating to an incident on February 6, 2021 refer to a matter that is being investigated, and a final agency determination has not been made. Pursuant to the New York State Public Officers Law, Section 87(2)(g)(iii), such records may consist of intra-agency and possibly inter-agency material which is not a final agency determination and can be withheld. In addition, potentially responsive records are still being generated. The Department, under the New York State Freedom of Information Law, is not obligated to create new records in order to respond to your request.
>
> The request for Ms. Henry's EEO discrimination claims, allegations, disciplinary charges, personnel file and collective bargaining documents is pending, and we will notify you as we receive documents or responses.

36. However, DOC's August 9th response did not contain any of their own records as requested by Plaintiff, but inexplicably contained only multiple copies of Plaintiff's own FOIL request.

37. Since then, Plaintiff has commenced litigation and the Defendants have provided some names of the Doe Defendants. However, Defendants' disclosures to date are deficient in that they are missing reports and certain names of DOC members necessary for amending the complaint and litigating this case.

## MATERIAL FACTS

38. In or around December 2016, HENRY began working for DEFENDANT THE CITY OF NEW YORK ("CITY") and NEW YORK CITY DEPARTMENT OF CORRECTION ("DOC") at RIKERS ISLAND CORRECTIONAL FACILITY ("RIKERS") as a correction officer.

39. Henry's current compensation is approximately $65,000.00 per year.

40. Almost immediately after Plaintiff began working for DOC in December 2016, Defendants began discriminating against and harassing Plaintiff based on her sex and gender.

41. Plaintiff is not currently aware of the names of all individual DOC officers, captains, employees and agents other than as stated below:

42. Defendants DOC employees, including Defendants Wiley, Moye, Jiminez, Wright, John and Jane Does 1-8 openly referred and refer to Plaintiff as "a transgender" and "Paul" and using many derogatory slurs including but not limited to "tranny bitch."

43. Defendants Wiley, Moye, Jiminez, Wright, John and Jane Does 1-8 also provided this information to incarcerated people at Rikers, often informing them that Plaintiff, according to them, is a man named Paul, though Plaintiff is a woman.

44. Defendants' rumors, while false, spread like wildfire and have gravely jeopardized Plaintiff's life.

45. Incarcerated people at Rikers often informed Plaintiff in sum and substance "the guards told us you're a man."

46. Defendants Wiley, Moye, Jiminez, Wright,  John and Jane Does 1-8encourage each other and incarcerated people to ridicule, harass, and endanger Plaintiff based on her sex, gender, and perceived status as a transgender woman.

47. In 2017, Plaintiff filed an internal EEO complaint with DOC because of Defendants' discrimination against and harassment of Plaintiff ("the First EEO Complaint.") at Rikers GMDC.

48. Specifically, Defendant Cleon Wiley continuously made disparaging rumors about Ms. Henry's gender that grew pervasive throughout Rikers and DOC.

49. On or about August 14, 2017, Plaintiff filed an internal complaint with the DOC Equal Employment Opportunity Office regarding Defendant Wiley's discriminatory and harassing conduct.

50. Defendant Greg Cheung was the investigator assigned to the First EEO Complaint.

51. In his investigative file, Defendant Cheung noted, in part, as follows:

Complainant [Ms. Henry] alleges that Respondent [Cleon Wiley] has been spreading rumors that Complainant is transgender and/or a man. Complainant alleges that Respondent began spreading these rumors when they were at the Academy, and that he continued to do so when they were at GMDC. Complainant identified a number of MOS who have come to her, claiming to have heard others – both officers and inmates making comments – about Complainant's gender.

Complainant noted that she had a couple of interactions with Respondent that were not the subject of this case, but which made her uncomfortable. Complainant alleged that Respondent

9

made a comment about her lips looking soft during on-the-job training at GMDC. Complainant said that she had applied lip gloss and was sitting at a table by herself. Complainant alleged that Respondent sat down next to her and commented that her lips looked soft, to which responded [sic] by wiping off her lip gloss and leaving the table.

Respondent admits to commenting that Complainant's lips looking [sic] soft.

52. The EEO report provides further details about Plaintiff's allegations against Defendant Wiley, accusing him of sexual harassment and threatening behavior.

53. The EEO report provides further specific examples of the Defendants' discrimination against Plaintiff and identifies DOC members who were involved in spreading rumors about Plaintiff.

54. For example, in or around July 2017, during the 7x3 tour, Plaintiff heard an inmate tell Defendant Correction Officer Joshua Moye "That's a man" in reference to Plaintiff, to which Defendant Moye responded "I'll keep that in mind." Defendants Moye and Wiley then laughed at the inmate's comment while Defendant Wiley said "Yeah, even the inmate's saying it."

55. Similarly, in or around May of 2017, Defendant Miguel Jimenez participated in Plaintiff's discrimination and harassment by asking other DOC members if Ms. Henry is "a man or a woman."

56. As another example of Defendants discrimination and harassment against Plaintiff, Defendant Ohlynn Wright, Jr. told other DOC members "it's a dude" about Plaintiff. Specifically, Defendant Wiley claimed during the EEO investigation into Plaintiff's 2017 EEO allegations that Defendant Wright was the source of the rumors about Plaintiff's gender.

57. Defendant Cheung concluded his EEO report by stating, in part, as follows:

Here, there is a wealth of evidence that MOS and inmates made comments about or questioned Complainant's gender to such an extent that it appears more likely than not, that Complainant

10

was immersed in an intimidating, hostile, or offensive working environment. All of the witnesses interviewed claimed to have heard someone comment that Complainant is a man or question whether Complainant is a man or a woman.

58. Defendant Cheung also concluded that it was more likely than not that Defendant Wiley participated in making such comments.

59. Cheung provided this report, his findings, and conclusions, to Defendant Assistant Commissioner and E.E.O. Officer Kammae Owens.

60. Defendants Cheung and Owens substantiated Plaintiff's 2017 claims of discrimination and harassment, but Cheung and Owens failed to issue disciplinary charges, falsely claiming in their recommendations that Plaintiff's allegations were outside of the 18-month statute of limitations for disciplinary charges.

61. This conclusion by Cheung and Owens was patently false. Plaintiff joined the DOC in December 2016 and filed her complaint in August of 2017 – less than one year after the discrimination first began. It appears from the DOC investigative file related to Plaintiff's 2017 allegations of discrimination that Defendants intentionally did not begin to meaningfully investigate Plaintiff's allegations until one year after she made them.

62. Thus, if Plaintiff's allegations of discrimination and harassment were outside of the 18-month statute of limitations, that is because Defendants intentionally did not investigate her allegations and issue their conclusions and recommendations in a timely manner.

63. Additionally, at no point, even up through and including the date of the commencement of this litigation, did Defendants Cheung, Owens, or any other DOC member inform Plaintiff of the outcome of their investigation into her 2017 allegations of discrimination and harassment.

64. Defendants have refused to tell Plaintiff the outcome of this investigation.

65. In fact, following the First EEO Complaint, Defendants retaliated against Plaintiff by making even more discriminatory comments to Plaintiff about her perceived gender and gender identity. As noted above, Defendants' discrimination and harassment of Plaintiff also consisted of their gravely dangerous practice of informing individuals incarcerated at Rikers that Plaintiff was a transgender woman who was assigned male at birth. This conduct did not stop even after the conclusion of the investigation into the First EEO Complaint.

66. As of February 2020, Plaintiff was assigned to George R. Vierno Center ("GRVC") at Rikers, where the discrimination and harassment continued.

67. Defendants' harassment of and discrimination against Plaintiff reached its height on February 6, 2021.

68. On February 6, 2021, Defendants and their officers, captains, employees and agents intentionally, recklessly, and negligently caused Plaintiff to be assaulted, battered, and injured by people incarcerated in the 7B day room of GRVC at Rikers Island Correctional Facility, 09-09 Hazen Street, East Elmhurst, NY 11370.

69. Defendants Administrative Captain Rashida Smith, Deputy Warden Lisa Barnaby, and Warden Jean Rene were responsible for assigning Plaintiff to the above location on the above date.

70. Specifically, Defendants intentionally assigned Plaintiff to this location with no other correction officers present.

71. Further, Defendants were aware that there was a faulty pantry door at this location which divided the 7A dayroom from the 7B dayroom. At the time Defendants set Plaintiff up to be assaulted, they long knew that this pantry door was not secured, was in fact broken, and that incarcerated people on either side of this door could knock through it.

12

72. As a result of the Defendants intentionally creating and ignoring this danger, on the date of incident, rival members of the Latin Kings and the Bloods began fighting.

73. Defendants had ensured that Plaintiff was the only DOC employee present at this time.

74. As the fight ensued, Plaintiff pressed her security button four times, which alerts the control room that she is in trouble and needs assistance.

75. John and Jane Does 6 and 7 were assigned to the command room on the date of the incident and were responsible for assigning Plaintiff the above location and refused to provide PLAINTIFF with assistance after she notified the command room that she was in danger by hitting the emergency alert button.

76. Upon information and belief, John and Jane Does 6 and 7 may have been Captain Wynn and Captain Patillo.

77. Pursuant to protocol, John and Jane Does 6 and 7 were responsible for assembling or alerting the probe team – a heavily armed and protected group of DOC employees – who would then enter the day room, de-escalate the situation or take control of the situation, and protect Plaintiff and/or remove her to safety.

78. No one in the control room nor anyone from the probe team responded to Plaintiff's calls for help.

79. Additionally, Defendant Correction Officer Conroy Morgan is a DOC officer who was assigned to 7A on the date of the incident and refused to assist PLAINTIFF as she was beaten.

80. During the fight between inmates, Defendants sending no assistance, an inmate called Plaintiff a "tranny bitch" and hit her in the face and head, causing her to fall to the ground and lose consciousness.

81. At some point, Plaintiff regained consciousness to another incarcerated person dragging her across the room.

82. At this point, Defendants had still provided no assistance or protection to Plaintiff, who was injured and in fear for her life and safety.

83. Eventually, an officer and captain appeared in the dayroom with no probe team, took Plaintiff outside, and called an ambulance.

84. As a result of Defendants' actions, Plaintiff has sustained permanent and physical injuries including but not limited to a broken nose, concussion, loss of consciousness, facial scarring, a cracked veneer, injuries to her right shoulder, right elbow, right wrist, right hip, knees, and right ankle.

85. In March 2021, Plaintiff filed another EEO Complaint (the "Second EEO Complaint") against Defendants for their continued harassment, discrimination, and retaliation against her, including the above-described series of events where they intentionally placed her alone in an unsecured dayroom with rival gang members as further discrimination, harassment, and retaliation.

86. Following the February 6, 2021 assault of Plaintiff and her Second EEO Complaint, Defendants have continued to harass, discriminate and retaliate against Plaintiff as follows.

87. First, gallingly, on or about April 1, 2021, following Defendants' orchestration of Plaintiff's assault, Defendants charged Plaintiff with disciplinary violations related to her February 6, 2021 assault. There is no basis for these charges and the purpose of these false charges are to further harass Plaintiff based on her sex, gender, and perceived status as a transgender woman and to retaliate against her for her complaints of discrimination against Defendants.

88. Specifically, Defendants Deputy Warden Lisa Barnaby and Warden Jean Rene made the decision to issue Memorandum of Charge No. 320/21 in support of Defendants' request for disciplinary charges against Plaintiff related to her own assault.

89. Further, based on this information from Defendants Barnaby and Rene, knowing it was false, Defendant Townsend falsely accused Plaintiff of the following in formal DOC charges:

> Said officer, on or about February 6, 2021 at approximately 1829 hours, while assigned to George R. Vierno (GRVC) Housing area 7 "B", engaged in conduct unbecoming an officer and of a nature to bring discredit upon the Department and failed to efficiently perform her duties in that she failed to secure the pantry door food slot, and, as a result, an inmate on inmate fight occurred that then led to a Use of Force between other officers and said inmates.

90. These allegations were false and intentionally misleading and Defendant Townsend knew these allegations were false and intentionally misleading when she made them.

91. After nearly one year, in or about March 2020, DOC eventually agreed to withdraw many of these false allegations against Plaintiff.

92. Defendant Townsend made these false allegations against Plaintiff to further discriminate against Plaintiff based on her sex, gender, and perceived status as a transgender woman, and to further retaliate against Plaintiff for her complaints of discrimination.

93. In so doing, Defendant Townsend engaged in adverse employment actions against Plaintiff for engaging in protected activity of complaining of the discrimination.

94. Second, on July 9, 2021, Defendants sent Plaintiff back to GRVC, the same command where she was assaulted on February 6, 2021, thereby intentionally placing her back in danger.

95. Third, Defendants have failed and refused to conduct any investigation into Plaintiff's allegations of discrimination, retaliation, and into her assault.

96. As a result, on July 13, 2021, Plaintiff had no choice but to write the Defendants as follows:

> I C.O Henry #8852 assigned to GRVC on the 1500x2331 hr. tour
> was knocked unconscious waking up to being dragged by an inmate.
> DOC is forcing me to work in the same facility where I was
> viciously attacked based on my perceived gender and sustained
> several injurys some of which include a broken nose and two
> cracked teeth. DOC is intentionally setting me up to be assaulted
> again in retaliation against me due to my complaints. I am requesting
> a leave of absence until DOC is able to have me transferred out of
> the facility in which I was brutally attacked.

97. Thus, the Defendants subjected Plaintiff to retaliation in the form of adverse employment

   actions for her complaints of discrimination and harassment against Defendants.

98. On July 16, 2021, DOC Deputy Director of the DOC EEO Florina Getman emailed DOC Chief

   Charlton Lemon stating that Ms. Henry "is requesting that she be transferred to a different

   facility after an inmate assault. Upon review, this appears to be a security matter."

99. On July 19, 2021, Deputy Warden Lisa Barnaby emailed Florina Getman and stated "Chief

   Lemon's instruction were to follow Operations Order 12/01 entitled, Serious Verified Threat.

   However, no such threat exist [sic]. No one has made a threat which would indicate Officer

   Henry may or could be made the subject of an act of violence. Officer Henry believed she may

   be targeted due to the inmates [sic] belief that she is a transgendered [sic] female."

100.   Defendant Barnaby's refusal to transfer Plaintiff to another facility constitutes further

   discrimination and harassment against Plaintiff, as it is clear that when Plaintiff requested the

   transfer, she had already experienced a serious assault as a result of the Defendants' harassment

   and discrimination. This assault is not in dispute and was captured on DOC video.

101.   Defendants' orchestrating Plaintiff's assault, refusing to investigate her complaints of

   discrimination, falsely charging her with disciplinary violations, and forcing her to return to

   work in the same facility where she was assaulted, all constitute discrimination on the basis of

   her perceived gender and gender identity.

16

102.   Defendants' orchestrating Plaintiff's assault, refusing to investigate her complaints of discrimination, falsely charging her with disciplinary violations, and forcing her to return to work in the same facility where she was assaulted, all constitute discrimination and retaliation for her complaints of discrimination.

103.   Upon information and belief, Plaintiff's performance was above average during the course of her employment with Defendants.

104.   Upon information and belief, Defendants have subjected Plaintiff to assault, disciplinary charges, refusal to investigate her complaints of discrimination, and assigned her back to the facility where she was assaulted solely because of her sex, gender, and perceived status as a transgender woman and her complaints of discrimination and harassment.

105.   Thus, in addition to discrimination against Plaintiff, Defendants also subjected Plaintiff to illegal and ongoing retaliation involving all of the above-described conduct up to and including forcing her to seek a leave of absence.

106.   Plaintiff felt frightened, offended, disturbed, threatened, and humiliated by the blatantly unlawful discrimination and retaliation.

107.   But for the fact of Plaintiff's perceived gender, Defendants would not have treated Plaintiff differently and would not have engaged in the conduct detailed herein, including orchestrating her assault, falsely charging her with disciplinary violations, refusing to investigate her complaints of discrimination.

108.   Plaintiff has been physically injured, unlawfully discriminated and retaliated against, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

109.   Defendants' actions and conduct were intentional and intended to harm Plaintiff.

110.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer physical injuries, the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Against Defendant City of New York)

111.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

112.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and gender, or perceived sex and gender.

113.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. Section 2000e et seq. by discriminating against Plaintiff because of her sex/gender, or perceived sex/gender.

114.    As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Against Defendant City of New York)

115.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

18

116.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a) provides it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.:

117.   Defendants retaliated against Plaintiff as described above.

118.   Defendants baselessly subjected Plaintiff to adverse employment actions prohibited by this statute.

119.   Defendants had no valid business justification for the retaliatory and abusive action taken against Plaintiff following her engagement in protected activity.

120.   Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

121.   As such, Plaintiff has been damaged as set forth herein.

**AS A THIRD CAUSE OF ACTION**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR VIOLATION OF THE FOURTEENTH AMENDMENT**
**AND PLAINTIFF'S RIGHT TO DUE PROCESS AND EQUAL PROTECTION**
**PURSUANT TO 42 U.S.C. SECTION 1983**
(Against the Individual Defendants Only)

122.   Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

123.   The Individual Defendants violated Plaintiff's rights under the Fourteenth Amendment of the United States Constitution by intentionally discriminating against her and retaliating against her because of her sex and gender, or perceived sex and gender, and forcing her to work under conditions which posed a substantial risk of serious harm to plaintiff's safety.

19

124.  The Individual Defendants violated Plaintiff's rights under the Fourteenth Amendment of the United States Constitution by failing to take reasonable measures to guarantee Plaintiff's safety, by actively causing her harm, and by conspiring and working together to conceal the fact of their discrimination and retaliation.

125.  The Individual Defendants also violated Plaintiff's right to due process based on her gender and/or sex.

126.  Alternatively, Plaintiff brings this claim for Defendants' violation of her 14th Amendment right to equal protection based on a "class of one" since if the Defendants did not treat Plaintiff differently based on her membership in a protected class, they treated her differently from others similarly situated and there is no rational basis for the difference in treatment.

127.  Specifically, the Individual Defendants actively facilitated Plaintiff's assault by inmates, and therefore failed to protect Plaintiff from violence.

128.  The Individual Defendants created the excessive risk to Plaintiff's health and safety in that they were aware of the fact that Plaintiff would be placed in imminent danger and harm by placing Plaintiff alone with members of rival gangs and after informing many of them that Plaintiff is a transgender woman.

129.  The Defendants further violated Plaintiff's due process rights by falsely charging her with disciplinary violations in retaliation for her complaints of discrimination.

130.  By so doing, the Individual Defendants subjected plaintiff to violations of her right to due process and equal protection and thereby violated and aided and abetted in the violations of Plaintiff's rights under the Fourteenth Amendments to the United States Constitution.

131.   By reason thereof, the Individual Defendants have violated 42 U.S.C. Section 1983 and caused Plaintiff to suffer the deprivation of her liberty, loss of her constitutional rights, physical injuries, and mental anguish.

### AS A FOURTH CAUSE OF ACTION
### FOR SEX AND GENDER DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(Against all Defendants)

132.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

133.   The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

134.   Defendants violated the section cited herein as set forth above.

135.   Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

136.   As such, Plaintiff has been damaged as set forth herein.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(Against the Individual Defendants Only)

137.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

138.    The <u>New York City Administrative Code</u> § 8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any

of the acts forbidden under this chapter, or attempt to do so."

139.    The Individual Defendants violated the section cited herein as set forth.

140.    Defendants' conduct was malicious, willful, outrageous, and conducted with fill

knowledge of the law.

141.    As such, Plaintiff has been damaged as set forth herein.

**AS A SIXTH CAUSE OF ACTION FOR RETALIATION**
**<u>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>**
(Against all Defendants)

142.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

143.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discriminate against any person because such

person has opposed any practices forbidden under this chapter."

144.    Defendants violated the section cited herein as set forth for Plaintiff's complaint of and

objection to discrimination as described above.

145.    Defendants' conduct was malicious, willful, outrageous, and conducted with fill

knowledge of the law.

146.    As such, Plaintiff has been damaged as set forth herein.

**AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION**
**<u>VICARIOUS LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>**
(Against Defendant City of New York)

147.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

22

148.   NYCHRL § 8-107(13) is entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor." It provides

> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.
> c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

149.   Defendant City violated the section cited herein as set forth.

150.   Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

151.   As such, Plaintiff has been damaged as set forth herein.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR SEX AND GENDER DISCRIMINATION**
**UNDER THE NEW YORK STATE EXECUTIVE LAW**
(Against all Defendants)

152.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

153.    New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . age, race, creed, color, national origin, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

154.    Defendants violated the section cited herein as set forth.

155.    Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

156.    As such, Plaintiff has been damaged as set forth herein.

**AS A NINTH CAUSE OF ACTION FOR RETALIATION**
**UNDER THE NEW YORK STATE EXECUTIVE LAW**
(Against all Defendants)

157.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

158.    New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

24

159.    Defendants violated the section cited herein as set forth.

160.    Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

161.    As such, Plaintiff has been damaged as set forth herein.

**AS A TENTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW**
(Against the Individual Defendants)

162.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

163.    New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

164.    The Individual Defendants violated this statute as set forth.

165.    Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

166.    As such, Plaintiff has been damaged as set forth herein.

**AS AN ELEVENTH CAUSE OF ACTION
AGAINST THE CITY AND INDIVIDUAL DEFENDANTS
FOR NEGLIGENCE
PURSUANT TO NEW YORK STATE LAW**

167.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

168.    That at all times hereinafter mentioned, the Defendant CITY OF NEW YORK assumed responsibility, supervision, and authority over the DOC and its agents, servants and employees, including but not limited to the Individual Defendants, and is liable to Plaintiff for the

intentional, reckless, and negligent acts complained of herein under the theories of vicarious liability and *respondeat superior*.

169.    The acts complained of herein resulted from the defendant CITY OF NEW YORK, through its agents, servants, and employees, breaching its duty to properly assign, train, supervise or discipline its DOC personnel.

170.    The Defendant CITY OF NEW YORK'S failure to properly assign, train, supervise or discipline its employees, including the personnel involved herein, constitutes acquiescence in, and tolerance of, ongoing unconstitutional conduct and created the atmosphere allowing defendants to believe they could, with impunity, allow Plaintiff to be attacked, assaulted, and discriminated and retaliated against.

171.    The Defendant CITY OF NEW YORK'S failure to properly assign, train, supervise or discipline its employees, constitutes acquiescence in, and tolerance of, ongoing unconstitutional conduct and created the atmosphere allowing Defendants to believe they could, with impunity, refuse to keep doors and other security measures in proper working order, and refuse to provide proper staffing in area where Plaintiff was assaulted.

172.    By reason of the foregoing, Defendant CITY OF NEW YORK, its agents, servants and employees, including but not limited to the Individual Defendants, were negligent in that they failed and refused to use such care in the performance of their duties as reasonably prudent employees would have used under similar circumstances.

173.    As a result of the foregoing, Plaintiff suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her rights.

174.    Plaintiff is entitled to the maximum amount allowed under the law.

**AS A TWELFTH CAUSE OF ACTION**
**AGAINST THE DEFENDANT CITY OF NEW YORK FOR**
***RESPONDEAT SUPERIOR***

175.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

176.    The defendant CITY OF NEW YORK employed the individual CORRECTION OFFICER

DEFENDANTS and is therefore vicariously liable for the actions and inactions, including

negligence, of those individual defendants.

177.    In the alternative, defendant CITY OF NEW YORK negligently employed or supervised

the individual CORRECTION OFFICER DEFENDANTS.

178.    As a result of the foregoing, Plaintiff suffered physical injuries, conscious pain and

suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and

deprivation of her rights.

**AS A THIRTEENTH CAUSE OF ACTION**
**AGAINST THE INDIVIDUAL CORRECTION OFFICER DEFENDANTS**
**FOR ASSAULT AND BATTERY**

179.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

180.    As alleged herein, the individual Defendants intentionally placed Plaintiff in fear of

imminent harmful and offensive contact.

181.    As a result of the foregoing, Plaintiff suffered physical injuries, conscious pain and

suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and

deprivation of her rights.

## JURY DEMAND

182.    Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), 42 U.S.C. Section 1983, the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL"); in that Defendants discriminated against Plaintiff on the basis of her sex, gender, status as a woman, and perceived status as a transgender women, and that Defendants retaliated against Plaintiff solely for her objecting to Defendants' discrimination.

B.    Also declaring that the Defendants damaged Plaintiff by way of Defendants' negligence, *respondeat superior*, assault, and battery.

C.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, retaliation, and conduct and to otherwise make her whole for any losses suffered because of such unlawful employment practices and conduct;

D.    Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.

Dated: Brooklyn, New York
        May 6, 2022

                                        JESSICA MASSIMI, ESQ.

                                        *Jessica Massimi*
                            By:   _____
                                        99 Wall Street, Suite 1264
                                        New York, NY 10005
                                        jessica.massimi@gmail.com
                                        646-241-9800

29